land must give security, notwithstanding the Act 41 Geo. III., by which an attachment could issue to Ireland to enforce there any order or decree made by the English court of chancery. Mullett v. Christmas, 2 Ball & B. 422; Ker v. Dutchess of Munster, Bunb. 35; Hill v. Reardon, 6 Madd. 46. A similar conclusion was reached in the courts of this state, where a plaintiff residing in Brooklyn was required to give security for costs under the Revised Statutes, in an action in the superior court of New York City, notwithstanding the statute by which judgments of that court could be enforced in any part of the state. Gardner v. Kelly, 2 Sandf. 632; Bolton v. Taylor, 18 Abb. Pr. 385. These decisions must be held decisive in the present case. The motion is granted.

## Case No. 8,634.

### In re LYNCH et al.

[7 Ben. 26.] 1

District Court, S. D. New York. Oct., 1873.

RENT OF BANKRUPT'S PREMISES AFTER AN INJUNCTION IN BANKRUPTCY—OCCUPATION BY MARSHAL—ALLOWANCE TO LANDLORD.

Where summary proceedings for dispossession under the statutes of the state of New York were taken by a landlord, and the tenants, pending the proceedings, were put into bankruptcy, and the proceedings in the state court were enjoined: *Held,* that the landlord was not necessarily entitled to rent. on the terms of the lease, from the date of the service of the injunction to the date of the adjudication of bankruptcy; that he was not to prove his debt for the rent for the period, as a general creditor, but must be paid by the assignee a proper allowance on application to the court; and that the same rule applied to the period after the adjudication, before the landlord regained possession of the premises.

[Cited in Re Lucius Hart Manuf'g Co., Case No. 8,592; Re Ives, Id. 7,116.]

A. leased premises to Lynch & Bernstein at $8,000 a year, payable quarterly. On a default of payment he commenced summary proceedings, under the statutes of the state of New York, to dispossess them, on April 9th, 1873, before the end of the first year. Two days afterwards a petition was filed to put L. & B. into bankruptcy; and A., and the magistrate before whom the dispossessing proceedings were pending, were that day enjoined by the bankruptcy court from any further proceedings till further order of said court. The marshal took possession of the premises and the property therein, under the warrant, on April 19th, and continued in possession till the property was sold, on April 29th; and the landlord did not obtain possession of the premises till May 1st. At the request of counsel, the register certified, for the decision of the court, the question, whether the landlord was entitled to be paid, out of the assets of the bankrupts, the rent in full, of said premi-

ses, from the 11th of April, when he was enjoined from taking proceedings to recover possession of said premises, or only from the 19th of April, when said tenants were adjudged bankrupts.

BLATCHFORD, District Judge. The landlord is not entitled necessarily, as a question of law, to full rent of the premises, from the date of service of the injunction to the date of the adjudication, at the rent prescribed by the lease. What compensation he is entitled to, if any, for such period, or for any period subsequent to the adjudication, is not presented for decision on the certificate.

The register subsequently certified to the court, by request of counsel and on the same facts, the questions: Is the landlord to prove his debt for the rent from April 11th to the adjudication, as a general creditor, or is he to be paid in full under the lease, or how is he to be compensated for rent during that period? How is he to be compensated for rent from April 19th to May 1st, when he recovered possession?

BLATCHFORD, District · Judge. 1. The landlord is not to prove his debt for the rent from April 11th to the adjudication, as a general creditor, and is not necessary to be paid at the rate in the lease, and is to be compensated for the use of the premises during that period by applying to the court and having a proper allowance made and paid by the assignee. in view of all the facts in the case.

2. The same rule applies to the period from April 19th to May 1st.

## Case No. 8,635.

### In re LYNCH et al. .

[16 N. B. R. 38; 1 24 Pittsb. Leg. J. 205.]

District Court, S. D. New York. June 30, 1877.

DEPOSITION FOR PROOF OF DEBT—FOREIGN COUNTRY.

Proof of debt can only be taken in a foreign country before one of the officers authorized by section 5079 of the Revised Statutes to do so.

[In the matter of Robert V. Lynch and William Emberson, bankrupts.]

By the Register:

I, James F. Dwight, one of the registers of said court in bankruptcy, do hereby certify that in the course of the proceedings in said cause before me the following question arose pertinent to the said proceedings, and is thus stated: Facts: The attorneys for James Hardy, trading as James Hardy & Co., Nottingham, in the county of Nottinghamshire, kingdom of Great Britain, offered for filing a deposition for proof of debt, made by said Hardy and executed and acknowledged before one Fras. Geo. Rawson, United States consular agent at said Nottingham aforesaid, which deposition I refused to file "because not taken before any of the officers authorized

---

1 [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

1 [Reprinted from 16 N. B. R. 38, by permission.]

by the 5079th section of the Revised Statutes to take proofs of debt in a foreign country." The attorneys for the creditors, Messrs, Arthur, Phelps, Knevals and Ransom. object to the decision of the register, rejecting the proof, and pray that the following question may be certified to the court for its decision: "Did the register err in refusing to file said deposition for proof of claim for the reasons indorsed thereon? As required by the practice I state as my opinion: That the statute having designated before whom proofs may be taken in foreign countries, others are not authorized to take them. All of which is respectfully submitted, this 29th of June, 1877.

BLATCHFORD, District Judge. Upon the certificate of James F. Dwight, register, etc., in charge of the above entitled matter, the following is the decision of the court: The question is answered in the negative.

## Case No. 8,636.

### LYNCH v. ASHTON.

[3 Cranch, C. C. 367.] [1]

Circuit Court, District of Columbia. Dec. Term, 1828.

ORPHANS—JUSTICE OF THE PEACE — POWER—CONTRACT—PART PERFORMANCE—SPECIFIC PERFORMANCE.

1. Justices of the peace have no power to bind out orphan children on a day in which the orphans' court is in session.

2. It is only where there is a contract in part executed that the court can compel the parties to execute it in an equitable manner, under the seventh section of the Maryland act of 1793, c. 45.

Petition, by an apprentice, to be discharged from the indentures, because not bound by the orphans' court, but by two justices of the peace, on a day in which the orphans' court was in session; in which case this court decided, in October last, in the case of May v. Bayne [Case No. 9,331], that the justices had no power to bind out an apprentice.

THE COURT (nem. con.) was of opinion, in this case, that there was no contract, for want of jurisdiction in the justices of the peace, who undertook to bind out the boy.

And CRANCH, Chief Judge, said, the boy has no power to bind himself; nor has the mother alone, or with his assent, a right to bind him out, without the authority of some tribunal. The two justices had no authority to bind him out, as the orphans' court was in session on that day. There was, therefore, no contract; and it is only where there is a contract in part executed, that this court can compel the parties to execute it in an equitable manner, under the Maryland act of 1793, c. 45, § 7.

[1] [Reported by Hon. William Cranch, Chief Judge.]

## Case No. 8,637.

### LYNCH et al. v. CROWDER.

[12 Law Rep. 355.]

District Court, S. D. New York. 1849.

ADMIRALTY—JURISDICTION—FOREIGN SEAMEN—EQUITY—COSTS.

1. Jurisdiction of the admiralty court in suits by foreign seamen examined and explained.
   [Cited in brief in Saunders v. The Victoria, Case No. 12.377. Cited in Ex parte Newman, 14 Wall. (81 U. S.) 169.]

2. Rule as to costs.

[This was a libel by Thomas Lynch and others against William Crowder, for wages.]

This was a British ship, with a British crew, shipped in England, and bound to Staten Island, and thence to a port of discharge in the United Kingdom. She brought out a cargo for Quebec, and passengers to Staten Island, where, on her arrival, the men requested to be discharged. The weight of the evidence is that the master assented to their leaving the vessel, and going to the British consul's office for their tickets of nationality and service. The master subsequently refused to consent to the discharge of the crew, or to pay them their wages, and the written dissent of the British consul to the crew's being permitted to sue in the United States courts for their wages is filed.

BETTS, District Judge. The principle which the court has repeatedly announced, and to which it is always disposed to adhere, is to decline taking cognizance of suits by foreign seamen when the voyage is not completely broken up or terminated, or the seamen have been wrongfully separated from the ship, or placed in a state of destitution here. The rule is founded upon the common interest all commercial nations have in preserving the services of their seamen to the vessel during the whole period of their engagement, and especially to secure their return home with the ship to the place of their allegiance. It would be pernicious to the interests of trade and commerce to encourage seamen in suits for wages in foreign ports, as the master or vessel, and frequently both, must in that way be interrupted in the business of the voyage, and the general adventure be subjected to embarrassing delays and losses. The occasional hardship which seamen must be subjected to by the enforcement of the rule will be more than compensated in the advance of the commercial benefits of trade and navigation, and in giving greater confidence to owners and masters in the fidelity of crews, and to the crews a stronger motive to fulfil punctually the terms of their engagements.

I do not perceive that the principle is varied at all by the consent of the master that the crew may leave his vessel. They may acquire by that a right in their home judicatories to wages for the full voyage, the same as if it had been entirely perform-